**KOPELOWITZ OSTROW P.A.**
Kristen Lake Cardoso (SBN 338762)
cardoso@kolawyers.com
One West Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Telephone: 954-525-4100

*Counsel for Plaintiff and the Putative Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL LIPMAN, *individually and on behalf of all others similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> KEESAL, YOUNG & LOGAN, <br><br> Defendant. | **Case No.** <br><br> **CLASS ACTION COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff, Michael Lipman ("Plaintiff"), individually and on behalf of the Class defined below of similarly situated persons, alleges the following against Keesal, Young & Logan ("Defendant" or "KYL"), based upon personal knowledge with respect to himself and on information and belief derived from, among other things, investigation by counsel as to all other matters:

### SUMMARY OF THE CASE

1.    This action arises from Defendant's failure to secure the personally identifiable information ("PII")[1] of Plaintiff and the members of the proposed Class, where Plaintiff provided his PII indirectly to Defendant for insurance claims or litigation.

2.    KYL is a law firm with about 30 lawyers based in Long Beach, California and with

---

[1] The Federal Trade Commission defines "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." 17 C.F.R. § 248.201(b)(8).

CLASS ACTION COMPLAINT

1  other offices in San Francisco, Seattle, Anchorage, and Hong Kong.[2] Its practice areas include,

2  according to its website: business litigation, class/mass actions, Compliance, Operations & Data

3  Control Advisory (CODA), health care, insurance, privacy & data security, professional liability, and

4  white-collar criminal defense.[3]

5      3.    On or around June 13, 2024, KYL discovered suspicious activity on its network. KYL

6  determined that between June 7 and June 13, 2024, an unauthorized actor downloaded files off its

7  system, which contained the PII of individuals that was being stored on KYL's systems (the "Data

8  Breach").[4]

9      4.    The PII intruders accessed and infiltrated from Defendant's systems included

10  individuals' name, Social Security number, financial account information, driver's license number,

11  passport number, government identification number, date of birth, taxpayer identification number,

12  biometric information, and username/password.[5] The Data Breach also involved the medical

13  information and health insurance information of some Class Members, which is protected health

14  information ("PHI") (collectively with PII, "Private Information").[6]

15      5.    As a result of the Data Breach, which Defendant failed to prevent, the Private

16  Information of individuals including Plaintiff (and Class Members) was stolen.[7]

17      6.    Instead, Defendant disregarded the rights of Plaintiff and Class Members by

18  intentionally, willfully, recklessly, and/or negligently failing to implement reasonable measures to

19  safeguard Private Information and by failing to take necessary steps to prevent unauthorized disclosure

20  _____

21  [2] Keesal, Young & Logan, https://www.kyl.com/.
   [3] Keesal, Young & Logan, *Practice Areas*, https://www.kyl.com/practice-areas-2.

22  [4] *See* Keesal, Young & Logan, *Notice of Data Event*, https://www.kyl.com/notice-of-data-event/.
   [5] *Id.*

23  [6] Under the Health Insurance Portability and Accountability Act, 42 U.S.C. § 1320d *et seq.*, and its
   implementing regulations ("HIPAA"), "protected health information" is defined as individually

24  identifiable information relating to the past, present, or future health status of an individual that is
   created, collected, or transmitted, or maintained by a HIPAA-covered entity in relation to the provision
   of healthcare, payment for healthcare services, or use in healthcare operations. 45 C.F.R. § 160.103

25  *Protected health information*. "Business Health information such as diagnoses, treatment information,
   medical test results, and prescription information are considered protected health information under

26  HIPAA, as are national identification numbers and demographic information such as birth dates,
   gender, ethnicity, and contact and emergency contact information. *Summary of the HIPAA Privacy*

27  *Rule*, DEP'T FOR HEALTH & HUM. SERVS., https://www.hhs.gov/hipaa/for-professionals/privacy/laws-
   regulations/index.html (last visited September 11, 2024).

28  [7] *See* Notice Letter Plaintiff received from Defendant attached hereto as ***Exhibit A***.

CLASS ACTION COMPLAINT
2

of that information. Defendant's woefully inadequate data security measures made the Data Breach a foreseeable, and even likely, consequence of its negligence.

7.      As a direct and proximate result of the Data Breach, Plaintiff and Class Members have suffered actual and present injuries, including but not limited to: (a) present, certainly impending, and continuing threats of identity theft crimes, fraud, scams, and other misuses of their Private Information; (b) diminution of value of their Private Information; (c) loss of benefit of the bargain (price premium damages); (d) loss of value of privacy and confidentiality of the stolen Private Information; (e) illegal sales of the compromised Private Information; (f) mitigation expenses and time spent responding to and remedying the effects of the Data Breach; (g) identity theft insurance costs; (h) "out of pocket" costs incurred due to actual identity theft; (i) credit freezes/unfreezes; (j) expense and time spent on initiating fraud alerts and contacting third parties; (k) decreased credit scores; (l) lost work time; and (m) anxiety, annoyance, and nuisance; (n) continued risk to their Private Information, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' Private Information.

8.      Plaintiff and Class Members would not have provided their valuable Private Information had they known that Defendant would make their Private Information Internet-accessible, not encrypt personal and sensitive data elements and not delete the Private Information it no longer had reason to maintain.

9.      Through this lawsuit, Plaintiff seek to hold Defendant responsible for the injuries they inflicted on Plaintiff and Class Members due to their impermissibly inadequate data security measures, and to seek injunctive relief to ensure the implementation of security measures to protect the Private Information that remains in Defendant's possession.

10.     The exposure of one's Private Information to cybercriminals is a bell that cannot be un-rung. Before this Data Breach, Plaintiff's and the Class's Private Information was exactly that—private. Not anymore. Now, their Private Information is forever exposed and unsecure.

## JURISDICTION AND VENUE

11.     The Court has subject matter jurisdiction over this action under the Class Action

CLASS ACTION COMPLAINT
3

1  Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of
2  interest and costs. Upon information and belief, the number of Class Members numbers in the
3  thousands, many of whom (including Plaintiff) have different citizenship from Defendant. Thus,
4  minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

5        12.    The Court has general personal jurisdiction over Defendant because Defendant's
6  headquarters and principal place of business is located at 310 Golden Shore, Suite 400, Long Beach,
7  California 90802.

8        13.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because it is the District
9  within which Defendant has the most significant contacts.

10                                          **PARTIES**

11       14.    Plaintiff is, and at all relevant times has been, a resident and citizen of Maryland, where
12  he intends to remain.

13       15.    Defendant is a California corporation with its headquarters and principal place of
14  business located at 310 Golden Shore, Suite 400, Long Beach, California 90802.

15                                   **FACTUAL ALLEGATIONS**

16   **A.  The Data Breach**

17       16.    Defendant did not use reasonable security procedures and practices appropriate to the
18  nature of the sensitive information it was maintaining for Plaintiff and Class Members, such as
19  encrypting the information or purging it when it is no longer needed, causing the exposure of Private
20  Information.

21       17.    As evidenced by the Data Breach, the Private Information contained in Defendant's
22  network and was not encrypted. Had the information been properly encrypted, the data thieves would
23  have exfiltrated only unintelligible data.

24       18.    Defendant admits it detected suspicious activity on its systems on June 13, 2024, but
25  wait until November 27, 2024 to inform members of the public that their Private Information may
26  have been affected.[8]

27

28  _____
   [8] *See* https://www.kyl.com/notice-of-data-event/.

**B. The Value of Private Information**

19.     In April 2020, ZDNet reported in an article titled "Ransomware mentioned in 1,000+ SEC filings over the past year", that "[r]ansomware gangs are now ferociously aggressive in their pursuit of big companies. They breach networks, use specialized tools to maximize damage, leak corporate information on dark web portals, and even tip journalists to generate negative news for complaints as revenge against those who refuse to pay."[9]

20.     In September 2020, the United States Cybersecurity and Infrastructure Security Agency published online a "Ransomware Guide" advising that "[m]alicious actors have adjusted their ransomware tactics over time to include pressuring victims for payment by threatening to release stolen data if they refuse to pay and publicly naming and shaming victims as secondary forms of extortion."[10]

21.     Stolen Private Information is often trafficked on the dark web, as is the case here. Law enforcement has difficulty policing the dark web due to this encryption, which allows users and criminals to conceal identities and online activity.

22.     When malicious actors infiltrate companies and copy and exfiltrate the Private Information that those companies store, that stolen information often ends up on the dark web because the malicious actors buy and sell that information for profit.[11]

23.     Another example is when the U.S. Department of Justice announced its seizure of AlphaBay in 2017, AlphaBay had more than 350,000 listings, many of which concerned stolen or fraudulent documents that could be used to assume another person's identity. Other marketplaces, similar to the now-defunct AlphaBay, "are awash with [Private Information] belonging to victims from countries all over the world. One of the key challenges of protecting Private Information online is its pervasiveness. As data breaches in the news continue to show, Private Information about employees,

---

[9]     https://www.zdnet.com/article/ransomware-mentioned-in-1000-sec-filings-over-the-past-year/ (last visited September 11, 2024).
[10]     *See*    https://www.cisa.gov/sites/default/files/2023-01-CISA_MSISAC_Ransomware%20Guide_8508C.pdf (last visited September 11, 2024).
[11]     *Shining a Light on the Dark Web with Identity Monitoring, IdentityForce*, Dec. 28, 2020, https://www.identityforce.com/blog/shining-light-dark-web-identity-monitoring     (last     visited September 11, 2024).

1  customers and the public is housed in all kinds of organizations, and the increasing digital

2  transformation of today's businesses only broadens the number of potential sources for hackers to

3  target."[12]

4      24.    The Private Information of consumers remains of high value to criminals, as evidenced

5  by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen

6  identity credentials. For example, Private Information can be sold at a price ranging from $40 to $200,

7  and bank details have a price range of $50 to $2009.[13] Experian reports that a stolen credit or debit

8  card number can sell for $5 to $110 on the dark web.[14] Criminals can also purchase access to entire

9  company data breaches.[15]

10      25.    Once Private Information is sold, it is often used to gain access to various areas of the

11  victim's digital life, including bank accounts, social media, credit card, and tax details. This can lead

12  to additional Private Information being harvested from the victim, as well as Private Information from

13  family, friends and colleagues of the original victim.

14      26.    According to the FBI's Internet Crime Complaint Center (IC3) 2019 Internet Crime

15  Report, Internet-enabled crimes reached their highest number of complaints and dollar losses in 2019,

16  resulting in more than $3.5 billion in losses to individuals and business victims.

17      27.    Victims of identity theft also often suffer embarrassment, blackmail, or harassment in

18  person or online, and/or experience financial losses resulting from fraudulently opened accounts or

19  misuse of existing accounts.

20      28.    Data breaches facilitate identity theft as hackers obtain consumers' Private Information

21  and thereafter use it to siphon money from current accounts, open new accounts in the names of their

22

---

23  [12] *Stolen PII & Ramifications: Identity Theft and Fraud on the Dark Web*, Armor, April 3, 2018,
24  https://www.armor.com/resources/blog/stolen-pii- ramifications- identity-theft-fraud-dark-web/ (last
    visited September 11, 2024).
    [13] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16,
25  2019, https://www.digitaltrends.com/computing/personal- data-sold-on-the-dark-web- how-much-it-
    costs/ (last visited September 11, 2024).
26  [14] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6,
    2017, https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-
27  selling-for-on-the-dark-web/ (last visited September 11, 2024).
    [15] *In the Dark*, VPNOverview, 2019, https://vpnoverview.com/privacy/anonymous- browsing/in-the-
28  dark/ (last visited September 11, 2024).

1    victims, or sell consumers' Private Information to others who do the same.

2        29.    For example, the United States Government Accountability Office noted in a June 2007

3    report on data breaches (the "GAO Report") that criminals use Private Information to open financial

4    accounts, receive government benefits, and make purchases and secure credit in a victim's name.[16]

5    The GAO Report further notes that this type of identity fraud is the most harmful because it may take

6    some time for a victim to become aware of the fraud, and can adversely impact the victim's credit

7    rating in the meantime. The GAO Report also states that identity theft victims will face "substantial

8    costs and inconveniences repairing damage to their credit records . . . [and their] good name."[17]

9        30.    The market for Private Information has continued unabated to the present, and in 2023

10   the number of reported data breaches in the United States increased by 78% over 2022, reaching 3205

11   data breaches.[18]

12       31.    The exposure of Plaintiff's and Class Members' Private Information to cybercriminals

13   will continue to cause substantial risk of future harm (including identity theft) that is continuing and

14   imminent in light of the many different avenues of fraud and identity theft utilized by third-party

15   cybercriminals to profit off of this highly sensitive information.

16   **C. Defendant Failed to Comply with Regulatory Requirements and Standards.**

17       32.    Federal and state regulators have established security standards and issued

18   recommendations to temper data breaches and the resulting harm to consumers and employees. There

19   are a number of state and federal laws, requirements, and industry standards governing the protection

20   of Private Information.

21       33.    For example, at least 24 states have enacted laws addressing data security practices that

22   require businesses that own, license, or maintain Private Information about a resident of that state to

23

---

24   [16] *See* Government Accountability Office, *Personal Information: Data Breaches are Frequent, but Evidence of Resulting Identity Theft is Limited; However, the Full Extent is Unknown* (June 2007),

25   https://www.gao.gov/assets/gao- 07-737.pdf (last visited September 11, 2024).
     [17] *Id.*

26   [18] Beth Maundrill, *Data Privacy Week: US Data Breaches Surge, 2023 Sees 78% Increase in Compromises*, INFOSECURITY MAGAZINE (Jan. 23, 2024); https://www.infosecurity-

27   magazine.com/news/us-data-breaches-surge-2023/ (last visited September 11, 2024); *see also* Identity

28   Theft Resource Center, *2023 Data Breach Report*, https://www.idtheftcenter.org/publication/ 2023-data-breach-report/ (last visited September 11, 2024).

1  implement and maintain "reasonable security procedures and practices" and to protect Private

2  Information from unauthorized access.

3      34.    Additionally, cybersecurity firms have promulgated a series of best practices that at a

4  minimum should be implemented by sector participants including, but not limited to: installing

5  appropriate malware detection software; monitoring and limiting network ports; protecting web

6  browsers and email management systems; setting up network systems such as firewalls, switches, and

7  routers; monitoring and protecting of physical security systems; protecting against any possible

8  communication system; and training staff regarding critical points.[19]

9      35.    The FTC has issued several guides for businesses, highlighting the importance of

10  reasonable data security practices. According to the FTC, the need for data security should be

11  considered for all business decision-making.[20]

12      36.    Under the FTC's 2016 *Protecting Personal Information: Guide for Business*

13  publication, the FTC notes that businesses should safeguard the personal customer information they

14  retain; properly dispose of unnecessary personal information; encrypt information stored on computer

15  networks; understand their network's vulnerabilities; and implement policies to rectify security

16  issues.[21]

17      37.    The guidelines also suggest that businesses use an intrusion detection system to expose

18  a breach as soon as it happens, monitor all incoming traffic for activity indicating someone is trying

19  to hack the system, watch for large amounts of data being siphoned from the system, and have a

20  response plan in the event of a breach.

21      38.    The FTC advises companies to not keep information for periods of time longer than

22  needed to authorize a transaction, restrict access to Private Information, mandate complex passwords

23  to be used on networks, utilize industry-standard methods for security, monitor for suspicious activity

24

---

[19] *See Addressing BPO Information Security: A Three-Front Approach*, DATAMARK, INC. (Nov. 2016), https://insights.datamark.net/addressing-bpo-information-security (last visited September 11, 2024).
[20] *Start With Security*, Fed. Trade Comm'n ("FTC"), https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last visited September 11, 2024).
[21] *Protecting Personal Information: A Guide for Business*, FTC, https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last visited September 11, 2024).

CLASS ACTION COMPLAINT
8

1  on the network, and verify that third-party service providers have implemented reasonable security

2  measures.[22]

3      39.    The FTC has brought enforcement actions against companies for failing to adequately

4  and reasonably protect consumer data, treating the failure to do so as an unfair act or practice barred

5  by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders originating from

6  these actions further elucidate the measures businesses must take to satisfy their data security

7  obligations.

8      40.    Defendant's failure to employ reasonable and appropriate measures to protect against

9  unauthorized access to confidential consumer data constitutes an unfair act or practice prohibited by

10  Section 5 of the FTCA, 15 U.S.C. § 45.

11      41.    Defendant's failure to verify that it had implemented reasonable security measures

12  constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

13  **D. Defendant Failed to Comply with Industry Practices.**

14      42.    Various cybersecurity industry best practices have been published and should be

15  consulted as a go-to resource when developing an organization's cybersecurity standards. The Center

16  for Internet Security ("CIS") promulgated its Critical Security Controls, which identify the most

17  commonplace and essential cyber-attacks that affect businesses every day and proposes solutions to

18  defend against those cyber-attacks.[23] All organizations collecting and handling Private Information,

19  such as Defendant, are strongly encouraged to follow these controls.

20      43.    Further, the CIS Benchmarks are the overwhelming option of choice for auditors

21  worldwide when advising organizations on the adoption of a secure build standard for any governance

22  and security initiative, including PCI DSS, NIST 800-53, SOX, FISMA, ISO/IEC 27002, Graham

23  Leach Bliley and ITIL.[24]

24      44.    Several best practices have been identified that a minimum should be implemented by

25

26  ---
[22] *Id.*

27  [23] Center for Internet Security, *Critical Security Controls*, at 1 (May 2021), https://learn.cisecurity.org/CIS-Controls-v8-guide-pdf (last visited September 11, 2024).

28  [24] *See CIS Benchmarks FAQ*, Center for Internet Security, https://www.cisecurity.org/cis-benchmarks/cis-benchmarks-faq/ (last visited September 11, 2024).

1  data management companies like Defendant, including but not limited to securely configuring

2  business software, managing access controls and vulnerabilities to networks, systems, and software,

3  maintaining network infrastructure, defending networks, adopting data encryption while data is both

4  in transit and at rest, and securing application software.[25]

5      45.    Defendant failed to follow these and other industry standards to adequately protect the

6  Private Information of Plaintiff and Class Members.

7  **E. The Data Breach Caused Injury to Class Members and Will Result in Additional Harm**

8     **Such as Fraud.**

9

10     46.    Without detailed disclosure to the victims of the Data Breach, individuals whose

11  Private Information was compromised by the Data Breach, including Plaintiff and Class Members,

12  were unknowingly and unwittingly exposed to continued misuse and ongoing risk of misuse of their

13  Private Information for months without being able to take available precautions to prevent imminent

14  harm.

15     47.    The ramifications of Defendant's failure to secure Plaintiff's and Class Members' data

16  are severe.

17     48.    Victims of data breaches are much more likely to become victims of identity theft and

18  other types of fraudulent schemes. This conclusion is based on an analysis of four years of data that

19  correlated each year's data breach victims with those who also reported being victims of identity fraud.

20     49.    The FTC defines identity theft as "a fraud committed or attempted using the identifying

21  information of another person without authority."[26] The FTC describes "identifying information" as

22  "any name or number that may be used, alone or in conjunction with any other information, to identify

23  a specific person."[27]

24     50.    Identity thieves can use Private Information, such as that of Plaintiff and Class

25  Members, which Defendant failed to keep secure, to perpetrate a variety of crimes that harm victims.

26

27  [25] *See* Center for Internet Security, *Critical Security Controls* (May 2021),
    https://learn.cisecurity.org/CIS-Controls-v8-guide-pdf (last visited September 11, 2024).
    [26] 17 C.F.R. § 248.201 (2013).

28  [27] *Id.*

1  For instance, identity thieves may commit various types of government fraud such as: immigration
2  fraud; obtaining a driver's license or identification card in the victim's name but with another's picture;
3  using the victim's information to obtain government benefits; or filing a fraudulent tax return using
4  the victim's information to obtain a fraudulent refund.

5       51.    As demonstrated herein, these and other instances of fraudulent misuse of the
6  compromised Private Information has already occurred and are likely to continue.

7       52.    As a result of Defendant's delay between the Data Breach in April and the notice of the
8  Data Breach sent to affected persons in August, the risk of fraud for Plaintiff and Class Members
9  increased exponentially.

10      53.    Reimbursing a consumer for a financial loss due to fraud does not make that individual
11 whole again. On the contrary, identity theft victims must spend numerous hours and their own money
12 repairing the impact to their credit. After conducting a study, the Department of Justice's Bureau of
13 Justice Statistics ("BJS") found that identity theft victims "reported spending an average of about 7
14 hours clearing up the issues" and resolving the consequences of fraud in 2014.[28]

15      54.    The 2017 Identity Theft Resource Center survey[29] evidences the emotional suffering
16 experienced by victims of identity theft:

17  •    75% of respondents reported feeling severely distressed;

18  •    67% reported anxiety;

19  •    66% reported feelings of fear related to personal financial safety;

20  •    37% reported fearing for the financial safety of family members;

21  •    24% reported fear for their physical safety;

22  •    15.2% reported a relationship ended or was severely and negatively impacted by
23       identity theft; and

24  •    7% reported feeling suicidal.

25      55.    Identity theft can also exact a physical toll on its victims. The same survey reported
26

---

27 [28] *Victims of Identity Theft*, Bureau of Justice Statistics (Sept. 2015) http://www.bjs.gov/content/
   pub/pdf/vit14.pdf (last visited September 11, 2024).
28 [29] *Id.*

CLASS ACTION COMPLAINT
11

that respondents experienced physical symptoms stemming from their experience with identity theft:

- 48.3% of respondents reported sleep disturbances;

- 37.1% reported an inability to concentrate / lack of focus;

- 28.7% reported they were unable to go to work because of physical symptoms;

- 23.1% reported new physical illnesses (aches and pains, heart palpitations, sweating, stomach issues); and

- 12.6% reported a start or relapse into unhealthy or addictive behaviors.[30]

56.    There may be a time lag between when harm occurs versus when it is discovered, and also between when Private Information is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[31]

Thus, Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights.

**F.  Plaintiff and Class Members Suffered Damages.**

57.    As a direct and proximate result of Defendant's wrongful actions and inaction and the resulting Data Breach, Plaintiff and Class Members have already been harmed by the fraudulent misuse of their Private Information, and have been placed at an imminent, immediate, and continuing increased risk of additional harm from identity theft and identity fraud, requiring them to take the time which they otherwise would have dedicated to other life demands such as work and family in an effort

---

[30] *Id.*
[31]    GAO, *Report to Congressional Requesters*, at 29 (June 2007), http://www.gao.gov/new.items/d07737.pdf (last visited September 11, 2024).

to mitigate both the actual and potential impact of the Data Breach on their lives. Such mitigatory actions include, *inter alia*, placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, sorting through dozens of phishing and spam email, text, and phone communications, and filing police reports. This time has been lost forever and cannot be recaptured.

58.    Defendant's wrongful actions and inaction directly and proximately caused the theft and dissemination into the public domain of Plaintiff's and Class Members' Private Information, causing them to suffer, and continue to suffer, economic damages and other actual harm for which they are entitled to compensation, including:

a.    theft and misuse of their personal and financial information;

b.    the imminent and certainly impending injury flowing from potential fraud and identity theft posed by their Private Information being placed in the hands of criminals and misused via the sale of Plaintiff's and Class Members' information on the Internet's black market;

c.    the untimely and inadequate notification of the Data Breach;

d.    the improper disclosure of their Private Information;

e.    loss of privacy;

f.    ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach;

g.    ascertainable losses in the form of deprivation of the value of their Private Information, for which there is a well-established national and international market;

h.    the loss of productivity and value of their time spent to address, attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach, including finding fraudulent charges, cancelling and reissuing cards, purchasing credit monitoring and identity theft protection services, imposition of withdrawal and purchase limits on compromised accounts, and the inconvenience, nuisance and

1    annoyance of dealing with all such issues resulting from the Data Breach; and

2        i.    nominal damages.

3        59.    While Plaintiff's and Class Members' Private Information has been stolen, Defendant

4    continues to hold Plaintiff's and Class Members' Private Information. Particularly because Defendant

5    has demonstrated an inability to prevent a breach or stop it from continuing even after being detected,

6    Plaintiff and Class Members have an undeniable interest in ensuring that their Private Information is

7    secure, remains secure, is properly and promptly destroyed, and is not subject to further theft.

8    **G. Plaintiff's Experience.**

9        60.    At the time of the Data Breach, Plaintiff's Private Information, including his name and

10   Social Security number, was stored on Defendant's systems.

11       61.    Plaintiff received a Notice of Security Incident from Defendant dated November 27,

12   2024. He did not recognize the name "Keesal, Young & Logan" and did not know how or why

13   Defendant had his Private Information stored on its systems.

14       62.    Since the Data Breach, Plaintiff has experienced anxiety and increased concerns for the

15   loss of his privacy, as well as anxiety over the impact of cybercriminals accessing and using his Private

16   Information.

17       63.    Plaintiff has a continuing interest in ensuring that his Private Information, which, upon

18   information and belief, remains backed up in Defendant's possession, is protected and safeguarded

19   from future breaches.

20       64.    Plaintiff  is very careful about sharing sensitive Private Information. He stores

21   documents containing Private Information in safe and secure locations and has never knowingly

22   transmitted unencrypted sensitive Private Information over the Internet or any other unsecured source.

23   Plaintiff would not have entrusted his Private Information to Defendant had he known of Defendant's

24   lax data security policies.

25       65.    As a direct and proximate result of the Data Breach, Plaintiff has made reasonable

26   efforts to mitigate the impact of the Data Breach, including by regularly and closely monitoring his

27   financial accounts.

28

66.    As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address the harms caused by the Data Breach. As a result of the Data Breach, he has faced and faces a present and continuing risk of fraud and identity theft for his lifetime.

## CLASS ALLEGATIONS

67.    Plaintiff brings this class action individually on behalf of himself and all members of the following Class of similarly situated persons pursuant to Federal Rule of Civil Procedure 23. Plaintiff seeks certification under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) of the following Nationwide Class:

> All persons residing in the United States whose Private Information was compromised in the Data Breach, including all who were sent a notice of the Data Breach.

68.    Excluded from the Class are Defendant and its affiliates, parents, subsidiaries, officers, agents, and directors, any entities in which Defendant has a controlling interest, as well as the judge(s) presiding over this matter and the clerks, judicial staff, and immediate family members of said judge(s).

69.    Plaintiff reserves the right to modify or amend the foregoing Class definitions before the Court determines whether certification is appropriate.

70.    Numerosity: The members in the Class are so numerous that joinder of all Class Members in a single proceeding would be impracticable.

71.    Commonality and Predominance: Common questions of law and fact exist as to all Class Members and predominate over any potential questions affecting only individual Class Members. These common questions of law or fact include, *inter alia*:

a.    Whether Defendant engaged in the conduct alleged herein;

b.    Whether Defendant had a duty to implement and maintain reasonable security procedures and practices to protect and secure Plaintiff's and Class Members' Private Information from unauthorized access and disclosure;

c.    Whether Defendant's computer systems and data security practices used to

1    protect Plaintiff's and Class Members' Private Information violated the FTC

2    Act and/or state laws, and/or Defendant's other duties discussed herein;

3    d.    Whether Defendant failed to adequately respond to the Data Breach, including

4    failing to investigate it diligently and notify affected individuals in the most

5    expedient time possible and without unreasonable delay, and whether this

6    caused damages to Plaintiff and Class Members;

7    e.    Whether Defendant unlawfully shared, lost, or disclosed Plaintiff's and Class

8    Members' Private Information;

9    f.    Whether Defendant's data security systems prior to and during the Data Breach

10    complied with applicable data security laws and regulations;

11    g.    Whether Defendant's data security systems prior to and during the Data Breach

12    were consistent with industry standards;

13    h.    Whether Plaintiff and Class Members suffered injury as a proximate result of

14    Defendant's negligent actions or failures to act;

15    i.    Whether Defendant failed to exercise reasonable care to secure and safeguard

16    Plaintiff's and Class Members' Private Information;

17    j.    Whether Defendant breached duties to protect Plaintiff's and Class Members'

18    Private Information;

19    k.    Whether Defendant's actions and inactions alleged herein were negligent;

20    l.    Whether Defendant were unjustly enriched by their conduct as alleged herein;

21    m.    Whether Plaintiff and Class Members are entitled to additional credit or identity

22    monitoring and monetary relief; and

23    n.    Whether Plaintiff and Class Members are entitled to equitable relief, including

24    injunctive relief, restitution, disgorgement, and/or the establishment of a

25    constructive trust.

26    72.    Defendant engaged in a common course of conduct giving rise to the legal rights sought

27    to be enforced by Plaintiff on behalf of himself and all other Class Members. Individual questions, if

28

CLASS ACTION COMPLAINT
16

1    any, pale in comparison, in both quantity and quality, to the numerous common questions that

2    dominate this action.

3        73.    <u>Typicality:</u> Plaintiff's claims are typical of the claims of the Class. Plaintiff, like all

4    proposed members of the Class, had his Private Information compromised in the Data Breach. Plaintiff

5    and Class Members were injured by the same wrongful acts, practices, and omissions committed by

6    Defendant, as described herein. Plaintiff's claims therefore arise from the same practices or course of

7    conduct that give rise to the claims of all Class Members.

8        74.    <u>Adequacy:</u> Plaintiff will fairly and adequately protect the interests of the Class

9    Members. Plaintiff is an adequate representative of the Class and has no interests adverse to, or conflict

10   with, the Class he seeks to represent. Plaintiff has retained counsel with substantial experience and

11   success in the prosecution of complex consumer protection class actions of this nature.

12       75.    <u>Superiority:</u> A class action is superior to any other available means for the fair and

13   efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in

14   the management of this class action. The damages and other financial detriment suffered by Plaintiff

15   and all other Class Members are relatively small compared to the burden and expense that would be

16   required to individually litigate their claims against Defendant, so it would be impracticable for Class

17   Members to individually seek redress from Defendant's wrongful conduct. Even if Class Members

18   could afford individual litigation, the court system could not. Individualized litigation creates a

19   potential for inconsistent or contradictory judgments and increases the delay and expense to all parties

20   and the court system. By contrast, the class action device presents far fewer management difficulties

21   and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by

22   a single court.

23       76.    <u>Injunctive and Declaratory Relief:</u> Defendant has acted and/or refused to act on grounds

24   generally applicable to the Class such that final injunctive relief and/or corresponding declaratory

25   relief is appropriate as to the Class as a whole.

26       77.    Likewise, particular issues are appropriate for certification under Rule 24(c)(4) because

27   such claims present only particular, common issues, the resolution of which would advance the

28

1  disposition of this matter and the parties' interests therein. Such issues include, but are not limited to:

2  (a) whether Defendant owed a legal duty to Plaintiff and Class Members to exercise due care in

3  collecting, storing, and safeguarding their Private Information; (b) whether Defendant failed to

4  adequately monitor and audit their data security systems; and (c) whether Defendant failed to take

5  reasonable steps to safeguard the Private Information of Plaintiff and Class Members.

6       78.    All members of the proposed Class are readily ascertainable. Defendant has access to

7  the names in combination with addresses and/or e-mail addresses of Class Members affected by the

8  Data Breach. Indeed, impacted Class Members already have been preliminarily identified and sent a

9  breach notice letter.

**CAUSES OF ACTION**
**COUNT I**
**NEGLIGENCE**
**(On Behalf of Plaintiff and the National Class)**

13       79.    Plaintiff restates and realleges paragraphs 1 through 78 above as if fully set forth herein.

14       80.    Defendant gathered and stored the Private Information of Plaintiff and Class Members

15  as part of its business, which affects commerce.

16       81.    Plaintiff and Class Members entrusted Defendant with their Private Information with

17  the understanding that the information would be safeguarded.

18       82.    Defendant had full knowledge of the sensitivity of the Private Information and the types

19  of harm that Plaintiff and Class Members could and would suffer if their Private Information were

20  wrongfully disclosed.

21       83.    By assuming the responsibility to collect and store this data, Defendant had duties of

22  care to use reasonable means to secure and to prevent disclosure of the information, and to safeguard

23  the information from theft.

24       84.    Defendant owed a duty of care to Plaintiff and Class Members to provide data security

25  consistent with industry standards and other requirements discussed herein, and to ensure that their

26  systems and networks, and the personnel responsible for them, adequately protected the Private

27  Information.

28

85.    Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between Defendant, on the one hand, and Plaintiff and Class Members, on the other hand. That special relationship arose because Defendant was entrusted with their confidential Private Information as a condition of submitting an insurance claim with Defendant.

86.    Defendant also had a duty to exercise appropriate clearinghouse practices to remove Private Information that it was no longer required to retain pursuant to regulations.

87.    Moreover, Defendant had a duty to promptly and adequately notify Plaintiff and the Class of the Data Breach, but failed to do so.

88.    Defendant had and continues to have duties to adequately disclose that Plaintiff's and Class Members' Private Information within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiff and the Class to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their Private Information by third parties.

89.    Defendant breached its duties and thus was negligent, by failing to use reasonable measures to protect Plaintiff's and Class Members' Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

    a.    Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

    b.    Failing to adequately monitor the security of their networks and systems;

    c.    Allowing unauthorized access to Class Members' Private Information;

    d.    Failing to detect in a timely manner that Class Members' Private Information had been compromised;

    e.    Failing to remove Private Information it was no longer required to retain pursuant to regulations; and

    f.    Failing to timely and adequately notify Class Members about the Data Breach's occurrence and scope, so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

90.     Defendant breached its duties to Plaintiff and Class Members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information.

91.     Defendant knew or should have known that its failure to implement reasonable data security measures to protect and safeguard Plaintiff's and Class Members' Private Information would cause damage to Plaintiff and the Class.

92.     The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

93.     A breach of security, unauthorized access, and resulting injury to Plaintiff and the Class was reasonably foreseeable, particularly in light of Defendant's inadequate security practices.

94.     It was foreseeable that Defendant's failure to use reasonable measures to protect Class Members' Private Information would result in injury to Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of corporate cyberattacks and data breaches.

95.     Defendant had full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and the Class could and would suffer if the Private Information were wrongfully disclosed.

96.     Plaintiff and the Class were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing Private Information, the critical importance of providing adequate security of that Private Information, and the necessity for encrypting Private Information stored on its systems.

97.     Plaintiff and the Class had no ability to protect their Private Information that was in, and possibly remains in, Defendant's possession.

98.     Defendant was in a position to protect against the harm suffered by Plaintiff and the Class as a result of the Data Breach.

99.     Defendant's duties extended to protecting Plaintiff and the Class from the risk of

1    foreseeable criminal conduct of third parties, which have been recognized in situations where the

2    actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to

3    guard against the risk, or where the parties are in a special relationship. *See* Restatement (Second) of

4    Torts § 302B. Numerous courts and legislatures have also recognized the existence of a specific duty

5    to reasonably safeguard personal information.

6        100.    Defendant has admitted that the Private Information of Plaintiff and the Class was

7    wrongfully lost and disclosed to unauthorized third persons as a result of the Data Breach.

8        101.    But for Defendant's wrongful and negligent breaches of duties owed to Plaintiff and

9    the Class, Plaintiff's and Class Members' Private Information would not have been compromised.

10       102.    There is a close causal connection between Defendant's failure to implement security

11   measures to protect Plaintiff's and Class Members' Private Information, and the harm, or risk of

12   imminent harm, suffered by Plaintiff and the Class. Private Information was lost and accessed as the

13   proximate result of Defendant's failure to exercise reasonable care by adopting, implementing, and

14   maintaining appropriate security measures.

15       103.    As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have

16   suffered and will suffer injury, including but not limited to: (i) the actual misuse of their compromised

17   Private Information; (ii) invasion of privacy; (iii) lost or diminished value of Private Information; (iv)

18   lost time and opportunity costs associated with attempting to mitigate the actual consequences of the

19   Data Breach; (v) loss of benefit of the bargain; (vi) an increase in spam calls, texts, and/or emails (vii)

20   the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted

21   and available for unauthorized third parties to access and abuse; and (b) remains backed up in

22   Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails

23   to undertake appropriate and adequate measures to protect the Private Information; (viii) future costs

24   in terms of time, effort and money that will be expended to prevent, detect, contest, and repair the

25   inevitable and continuing consequences of compromised Private Information for the rest of their lives;

26   (ix) the present value of ongoing credit monitoring and identity defense services necessitated by the

27   Data Breach; (x) the value of the unauthorized access to their Private Information permitted by

28

1    Defendant; and (xi) any nominal damages that may be awarded.

2        104.    As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have

3    suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to,

4    anxiety, emotional distress, loss of privacy, and other economic and non-economic losses including

5    nominal damages.

6        105.    Plaintiff and Class Members are entitled to compensatory and consequential damages

7    suffered as a result of the Data Breach.

8        106.    Defendant's negligent conduct is ongoing, in that it still possesses Plaintiff's and Class

9    Members' Private Information in an unsafe and insecure manner.

10       107.    Plaintiff and Class Members are entitled to injunctive relief requiring Defendant to: (i)

11   strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of

12   those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to

13   all Class Members.

14                              **COUNT II**
                            **NEGLIGENCE PER SE**
15               **(On Behalf of Plaintiff and the National Class)**

16       108.    Plaintiff restates and realleges paragraphs 1 through 78 above as if fully set forth herein.

17       109.    Defendant had duties arising under the FTC Act to protect Plaintiff's and Class

18   Members' Private Information.

19       110.    Defendant breached its duties, pursuant to the FTC Act and other applicable standards,

20   and thus was negligent, by failing to use reasonable measures to protect Plaintiff's and Class Members'

21   Private Information. The specific negligent acts and omissions committed by Defendant include, but

22   are not limited to, the following: (i) failing to adopt, implement, and maintain adequate security

23   measures to safeguard Class Members' Private Information; (ii) failing to adequately monitor the

24   security of their networks and systems; (iii) allowing unauthorized access to Class Members' Private

25   Information; (iv) failing to detect in a timely manner that Class Members' Private Information had

26   been compromised; (v) failing to remove Private Information it was no longer required to retain

27   pursuant to regulations; and (vi) failing to timely and adequately notify Class Members about the Data

28

1    Breach's occurrence and scope, so that they could take appropriate steps to mitigate the potential for

2    identity theft and other damages.

3    111.    Defendant's violations of Section 5 of the FTC Act (and similar state statutes)

4    constitute negligence *per se*.

5    112.    Plaintiff and Class Members are consumers within the class of persons that Section 5

6    of the FTC Act were intended to protect.

7    113.    The harm that has occurred is the type of harm the FTC Act were intended to guard

8    against.

9    114.    The FTC has pursued enforcement actions against businesses that, as a result of their

10    failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused

11    the same harm as that suffered by Plaintiff and the Class.

12    115.    Defendant breached its duties to Plaintiff and Class Members by failing to provide fair,

13    reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class

14    Members' Private Information.

15    116.    In addition, under state data security and consumer protection statutes such as those

16    outlined herein, Defendant had a duty to implement and maintain reasonable security procedures and

17    practices to safeguard Plaintiff's and Class Members' Private Information.

18    117.    Plaintiff and Class Members were foreseeable victims of Defendant's violations of the

19    FTC Act, and state data security and consumer protection statutes. Defendant knew or should have

20    known that its failure to implement reasonable data security measures to protect and safeguard

21    Plaintiff's and Class Members' Private Information would cause damage to Plaintiff and the Class.

22    118.    As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and the

23    Class have suffered and will suffer injury, including but not limited to: (i) the actual misuse of their

24    compromised Private Information; (ii) invasion of privacy; (iii) lost or diminished value of Private

25    Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual

26    consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) an increase in spam calls,

27    texts, and/or emails; and (vii) the continued and certainly increased risk to their Private Information,

28

CLASS ACTION COMPLAINT
23

1    which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and

2    (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so

3    long as Defendant fails to undertake appropriate and adequate measures to protect the Private

4    Information.

5           119.    As a direct and proximate result of Defendant's negligence *per se* Plaintiff and the

6    Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not

7    limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

8           120.    Finally, as a direct and proximate result of Defendant's negligence *per se*, Plaintiff and

9    the Class have suffered and will suffer the continued risks of exposure of their Private Information,

10   which remain in Defendant's possession and is subject to further unauthorized disclosures so long as

11   Defendant fails to undertake appropriate and adequate measures to protect the Private Information in

12   their continued possession.

13                                          **COUNT III**
                                     **UNJUST ENRICHMENT**
14                       **(On Behalf of Plaintiff and the National Class)**

15          121.    Plaintiff restates and realleges paragraphs 1 through 78 above as if fully set forth herein.

16          122.    Plaintiff and Class Members conferred a monetary benefit on Defendant. Specifically,

17   they provided Defendant with their Private Information. In exchange, Defendant should have provided

18   adequate data security for Plaintiff and Class Members'.

19          123.    Defendant knew that Plaintiff and Class Members conferred a benefit on it in the form

20   their Private Information as a necessary part of submitting insurance claims. Defendant appreciated

21   and accepted that benefit. Defendant profited from these transactions and used the Private Information

22   of Plaintiff and Class Members for business purposes.

23          124.    Upon information and belief, Defendant funds its data security measures entirely from

24   its general revenue, including payments on behalf of or for the benefit of Plaintiff and Class Members.

25          125.    As such, a portion of the payments made for the benefit of or on behalf of Plaintiff and

26   Class Members is to be used to provide a reasonable level of data security, and the amount of the

27   portion of each payment made that is allocated to data security is known to Defendant.

28

CLASS ACTION COMPLAINT
24

126.    Defendant, however, failed to secure Plaintiff and Class Members' Private Information and, therefore, did not provide adequate data security in return for the benefit Plaintiff and Class Members provided.

127.    Defendant would not be able to carry out an essential function of its regular business without the Private Information of Plaintiff and Class Members and derived revenue by using it for business purposes. Plaintiff and Class Members expected that Defendant or anyone in Defendant's position would use a portion of that revenue to fund adequate data security practices.

128.    Defendant acquired the Private Information through inequitable means in that it failed to disclose the inadequate security practices previously alleged.

129.    If Plaintiff and Class Members knew that Defendant had not reasonably secured their Private Information, they would not have allowed their Private Information to be provided to Defendant.

130.    Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff and Class Members' Private Information. Instead of providing a reasonable level of security that would have prevented the hacking incident, Defendant instead calculated to increase its own profit at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures and diverting those funds to its own profit. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's decision to prioritize its own profits over the requisite security and the safety of their Private Information.

131.    Under the principles of equity and good conscience, Defendant should not be permitted to retain the money wrongfully obtained Plaintiff and Class Members, because Defendant failed to implement appropriate data management and security measures that are mandated by industry standards.

132.    Plaintiff and Class Members have no adequate remedy at law.

133.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and

1  opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach;

2  (v) loss of benefit of the bargain; (vi) experiencing an increase in spam calls, texts, and/or emails; (vii)

3  nominal damages; and (viii) the continued and certainly increased risk to their Private Information,

4  which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and

5  (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so

6  long as Defendant fails to undertake appropriate and adequate measures to protect the Private

7  Information.

8      134.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members

9  have suffered and will continue to suffer other forms of injury and/or harm.

10     135.    Defendant should be compelled to disgorge into a common fund or constructive trust,

11  for the benefit of Plaintiff and Class Members, proceeds that they unjustly received from them. In the

12  alternative, Defendant should be compelled to refund the amounts that Plaintiff and Class Members

13  were underpaid by Defendant.

14                          **PRAYER FOR RELIEF**

15      Plaintiff, individually and on behalf of all other members of the class, respectfully requests that

16  the Court enter judgment in Plaintiff's favor and against Defendant as follows:

17      A.    Certifying the Class as requested herein, designating Plaintiff as Class representative,

18  and appointing Plaintiff's counsel as Class Counsel;

19      B.    Awarding Plaintiff and the Class appropriate monetary relief, including actual

20  damages, statutory damages, punitive damages, restitution, nominal damages and disgorgement;

21      C.    Awarding Plaintiff and the Class equitable, injunctive, and declaratory relief, as may

22  be appropriate. Plaintiff, on behalf of himself and the Class, seek appropriate injunctive relief designed

23  to prevent Defendant from experiencing another data breach by adopting and implementing best data

24  security practices to safeguard Private Information and to provide or extend credit monitoring services

25  and similar services to protect against all types of identity theft;

26      D.    Awarding Plaintiff and the Class pre-judgment and post-judgment interest to the

27  maximum extent allowable;

28

CLASS ACTION COMPLAINT
26

1      E.      Awarding Plaintiff and the Class reasonable attorneys' fees, costs, and expenses, as

2  allowable; and

3      F.      Awarding Plaintiff and the Class such other favorable relief as allowable under law.

4                          **JURY TRIAL DEMAND**

5      Plaintiff demands a trial by jury of all claims herein so triable.

6  Dated: December 3, 2024                    Respectfully submitted,

7                                             */s/ Kristen Lake Cardoso*
                                              Kristen Lake Cardoso (SBN 338762)
8                                             **KOPELOWITZ OSTROW P.A.**
                                              One West Law Olas Blvd., Suite 500
9                                             Fort Lauderdale, Florida 33301
                                              Tel: (954) 332-4200
10                                            cardoso@kolawyers.com

11                                            *Counsel for Plaintiff and the Proposed Class*