**O**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE KYL DATA SECURITY LITIGATION<br><br>*Consolidated Action* | Case No.: 2:24-CV-10406-MEMF-AYP<br><br>**ORDER GRANTING REQUEST FOR JUDICIAL NOTICE [DKT. NO. 51] AND GRANTING IN PART MOTION TO DISMISS [DKT. NOS. 49, 64]** |

Before this Court is a Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint filed by Defendant Keesal, Young and Logan. Dkt. No. 49 ("Motion"). Keesal, Young and Logan has filed a Request for Judicial Notice in support of the Motion. Dkt. No. 51 ("RJN"). For the reasons discussed below, the RJN is GRANTED and the Motion is GRANTED IN PART.

/ / /

/ / /

/ / /

/ / /

## BACKGROUND

### I. Factual Allegations[1]

This is a putative class action on behalf of people harmed by Keesal, Young and Logan ("KYL"). Dkt. No. 48 ¶¶ 1–5 ("Compl."). KYL, a California law firm, experienced a data breach in which an unauthorized actor acquired the personally identifiable information ("PII") of people who had indirectly provided it to KYL. *Id.* ¶¶ 1–2, 25. The named plaintiffs are Michael Lipman, Terrence Loftus, David Siemanowski, Morton Rosenberg, Jordon Flato, and Donna Orlando (collectively, "Plaintiffs"). *Id.* ¶¶ 19–24. Of the Plaintiffs, only Flato lives in California. *Id.* ¶ 23.

On June 13, 2024, KYL discovered suspicious activity on its network. *Id.* ¶ 3. KYL determined that, between June 7 and June 13, an unauthorized actor downloaded files from its system, which contained the PII of individuals that was stored on KYL's systems (the "Data Breach"). *Id.* The PII at issue included individual names, Social Security numbers, financial account information, driver's license numbers, passport numbers, government identification numbers, date of birth, taxpayer identification numbers, biometric information, usernames, passwords, and medical and health insurance information. *Id.* ¶ 5.

KYL did not receive Plaintiffs' PII directly. *Id.* ¶ 33. Rather, KYL and its clients were parties to contracts in which KYL agreed to process, store, collect, and safeguard Plaintiffs' PII. *Id.* Plaintiffs' had entrusted KYL's clients with their PII. *Id.* Those clients, in turn, entrusted KYL with Plaintiffs' PII. *Id.* But KYL failed to adequately safeguard the PII in their possession, thereby breaching its contracts with its clients. *Id.* Moreover, KYL permitted the Data Breach through the failure to use reasonable security procedures and practices appropriate to the nature of the sensitive information that it maintained for Plaintiffs. *Id.* ¶ 26. Defendant had a duty to do so, in order to avoid Plaintiffs' PII's disclosure to third parties. *Id.* ¶¶ 26–27.

---

[1] The following factual background is derived from the allegations in Plaintiffs' Consolidated Complaint, Dkt. No. 48 ("Compl."), except where otherwise indicated. For the purposes of this Motion, the Court treats these factual allegations as true, but at this stage of the litigation, the Court makes no finding on the truth of these allegations, and is therefore not—at this stage—finding that they are true.

On November 27, 2024, KYL started issuing Notice Letters notifying impacted individuals that their PII may have been affected by the Data Breach. *Id.* ¶ 32. In the following few weeks, each of Plaintiffs received Notice Letters. *Id.* ¶¶ 102, 109, 129, 135, 142, 150.

Plaintiffs seek to represent the following classes: (1) all persons residing in the United States whose Private Information was compromised in the Data Breach, including all who were sent a Notice Letter ("Class"), and (2) all persons residing in California whose Private Information was compromised in the Data Breach, including all who were sent a Notice Letter ("California Subclass"). *Id.* ¶¶ 157–58.

## II. Procedural History

On December 3, 2024, Lipman initiated this action and filed a complaint. Dkt. No. 1. This Court consolidated the relevant member cases on June 3, 2025. Dkt. No. 38. The parties stipulated to set a briefing schedule for the consolidated complaint and for Defendant's response. Dkt. No. 45. On October 23, 2025, Plaintiffs filed their Consolidated Class Action Complaint. Dkt. No. 48 ("Compl."). It alleges the following causes of action:

1. Negligence/negligence per se;
2. Unjust enrichment;
3. Breach of contract as third-party beneficiaries;
4. Violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq.;
5. Violations of the California Consumer Privacy Act, Cal. Civ. Code § 1798.150;
6. Violations of California's Customer Records Act, Cal. Civ. Code § 1798.80 et seq.

*See generally* Compl. Claims one, two, and three are brought on behalf of all Plaintiffs and the proposed Class. *Id.* Claims four, five, and six are brought on behalf of Flato and the proposed California Subclass. *Id.*

On November 24, 2025, KYL filed the instant Motion. *See* Motion. On the same day, KYL filed the instant RJN, *see* RJN, along with a supporting declaration, *see* Dkt. No. 50 ("Navarrete

Decl."). On December 23, 2025, Plaintiffs filed an Opposition. *See* Dkt. No. 52 ("Opp."). On January 6, 2026, KYL filed a Reply. *See* Dkt. No. 57 ("Reply").

The Court held a hearing on the Motion on February 19, 2026.

The parties filed a Joint Request Pursuant To Local Rule 83-9.2 on June 29, 2026. Dkt. No. 64.

**REQUESTS FOR JUDICIAL NOTICE (DKT. NO. 51)**

**I. Applicable Law**

A court may judicially notice facts that: "(1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Under this standard, courts may judicially notice "undisputed matters of public record," but generally may not notice "disputed facts stated in public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002).

On a motion to dismiss, courts are generally prohibited from "consider[ing] any material beyond the pleadings." *United States v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir. 2011) (quoting *Lee*, 250 F.3d at 688). Courts generally only consider the complaint and other materials "submitted with and attached to the Complaint." *Id.* at 999. Documents not attached to the complaint—including documents that might otherwise be subject to judicial notice—may only be considered if: "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *Id.* (citing *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)).

**II. Discussion**

In support of its Motion, KYL requests the Court judicially notice two documents. *See* RJN. KYL describes them as follows:

- Exhibit A: "January 7, 2025, Ruling in the case *Michelle Booker v. Hill, Farrer & Burrill LLP* ('*Booker* matter'), 23STCV22220 (Superior Court of California, County of Los Angeles) ('*Booker* ruling')"
- Exhibit B: "February 7, 2025, Judgment entered in the *Booker* matter."

*See id.* at 2. Plaintiffs do not appear to oppose this request. *See generally* Opp. It appears to this Court that, as both documents are court records, and therefore appear to be "undisputed matters of public record." *Lee*, 250 F.3d at 690.

Because the RJN requests notice of valid public records, this Court GRANTS the RJN and will take judicial notice of the documents attached to the Navarette Declaration. It will not, however, take judicial notice of any disputed facts stated therein.

## MOTION TO DISMISS (DKT. NO. 49)

KYL brings its Motion pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See* Motion at 4.

### I. Rule 12(b)(1)

A plaintiff must have Article III standing to bring a claim in federal court. To do so, the plaintiff must demonstrate that (1) it has suffered an injury in fact that is (a) concrete and particularized, (b) actual or imminent, not conjectural or hypothetical, (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Friends of the Earth v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). A plaintiff "must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

"A plaintiff threatened with future injury has standing to sue "if the threatened injury is 'certainly impending,' or if there is a 'substantial risk that the harm will occur.'" *In re Zappos.com, Inc.*, 888 F.3d 1020, 1025 (9th Cir. 2018) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014)). In the class action context, "a class action plaintiff must 'allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants.'" *Easter v. Am. W. Fin.*, 381 F.3d 948, 961 (9th Cir. 2004) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

Plaintiffs whose personal data has been compromised as part of a data breach may have Article III standing to pursue relief. The Ninth Circuit has considered "the sensitivity of the personal information, combined with its theft," to find that "plaintiffs had adequately alleged an injury in fact supporting standing." *In re Zappos.com, Inc.*, 888 F.3d at 1027 (citing *Krottner v. Starbucks Corp.*,

628 F.3d 1139 (9th Cir. 2010)). But data breach plaintiffs must still demonstrate that they face a "credible threat of real and immediate harm" stemming from the incident. *Krottner*, 628 F.3d at 1143.

Following the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), the standing analysis requires courts to ascertain "whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *Id.* at 424. This "does not require an exact duplicate in American history and tradition." *Id.* And the harm need not be tangible; certain intangible harms, such as disclosure of private information, "can also be concrete." *Id.* Indeed, in the Ninth Circuit, "violations of the right to privacy have long been actionable at common law." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020). Still, in the wake of *TransUnion*, the Ninth Circuit has commented that "Article III standing can be an uphill battle for data-breach plaintiffs, who must allege a 'concrete harm,' not just an 'asserted risk of future harm.'" *In re Cal. Pizza Kitchen Data Breach Litig.* (*CPK*), 129 F.4th 667, 678 (9th Cir. 2025) (quoting *TransUnion*, 594 U.S. at 437). There, the class's standing "rested on questionable footing" given that "there [was] no evidence that any [plaintiff's] compromised data was misused, and the hacker group is apparently known for not releasing the information to the dark web once it receives its ransom payment." *Id.*

## II. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to seek to dismiss a complaint for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Labels, conclusions, and "formulaic recitation of a cause of action's elements" are insufficient. *Twombly*, 550 U.S. at 545.

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

*Iqbal*, 556 U.S. at 679. Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Soo Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee*, 250 F.3d at 679. But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

As a general rule, leave to amend a dismissed complaint should be freely granted unless it is clear the complaint could not be saved by any amendment. Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

**III. <u>Discussion</u>**

KYL contends that Plaintiffs cannot bring this lawsuit at all because they have failed to adequately plead standing—in general and for injunctive relief. Motion at 4–9. Alternatively, they argue that even reaching the merits, Rule 12(b)(6) requires dismissal of Plaintiffs' claims and their requests for enhanced damages. *Id.* at 10–19.

In Opposition, Plaintiffs "withdraw their CCRA and Unjust Enrichment claims without prejudice." Opp. at 19. To that end, the Motion is GRANTED as to those two claims. Dismissal will be without leave to amend, as Plaintiffs do not give this Court any reason to conclude that further amendment would not be futile.

Plaintiffs oppose the remaining requests for dismissal. This Court addresses the remaining arguments on a claim-by-claim basis below.

**A. Plaintiffs have standing.**

As a threshold matter, KYL contends that Plaintiffs lack Article III standing because Plaintiffs have not alleged data misuse, and because none of Plaintiffs' other alleged harms—such as allegations of increased risk of harm, diminution in PII value, and lost time—do not confer standing. Motion at 4. Separately, they argue that, even if Plaintiffs *do* have standing, they do not have it to seek injunctive relief. *Id.* at 9. For the reasons below, this Court finds that Plaintiffs have standing, including standing to pursue injunctive relief.

/ / /

/ / /

/ / /

1. Plaintiffs sufficiently allege actual misuse of their data.

This Court finds that Plaintiffs have made well-pleaded allegations that, taken as true, indicate that they have suffered actual harm through the dissemination of their data onto the dark web. This, applying *TransUnion* and other binding case law, confers standing.

The operative Complaint alleges that the Data Breach implicated the putative classes' individual names, Social Security numbers, financial account information, driver's license numbers, passport numbers, government identification numbers, date of birth, taxpayer identification numbers, biometric information, usernames, passwords, and medical and health insurance information. Compl. ¶ 5. It alleges that "Plaintiffs and Class Members have already been harmed by the fraudulent misuse of their Private Information," and risk facing additional harm from identity theft and identity fraud. *Id.* ¶ 98. And it alleges that KYL's actions have caused Plaintiffs "to suffer, and continue to suffer, economic damages and other actual harm for which they are entitled to compensation, including[] theft and misuse of their personal and financial information." *Id.* ¶ 99. Plaintiffs further individually allege that they have experienced theft and misuse of their PII as a result of its dissemination in the Data Breach. *Id.* ¶ 103 (Lipman); *id.* ¶ 116 (Loftus); *id.* ¶ 130 (Siemanowski); *id.* ¶ 140 (Rosenberg); *id.* ¶ 148 (Flato); *id.* ¶ 155 (Orlando). It is true, as KYL notes, that the Complaint does not plead factual details supporting the conclusions that the individual plaintiffs "ha[ve] already suffered from the misuse of [their] PII because of the Data Breach." *E.g.*, *id.* ¶ 116. With one exception, the individual plaintiffs do not explain what sort of misuse has already occurred.[2]

Nevertheless, this Court is inclined to find that the actual theft of Plaintiffs' data, combined with plausible allegations that their data is already available on the dark web, is a sufficiently concrete injury to confer standing. As Plaintiffs allege, "Stolen Private Information is often trafficked on the dark web, as is the case here." *Id.* ¶ 39. "When malicious actors infiltrate companies and copy and exfiltrate the Private Information that those companies store, that stolen

---

[2] "Plaintiff Lipman has already suffered from the misuse of his PII because of the Data Breach. Since the Data Breach, he received a dark web notification from Identity Guard and was alerted that someone tried to use his credit card (although the bank did not approve the transaction)." Compl. ¶ 103. Even this, however, does not make clear that Lipman has suffered harm through misuse; at most, it appears that one attempt of misuse was thwarted by the bank's refusal to approve the transaction.

information often ends up on the dark web because the malicious actors buy and sell that information for profit." *Id.* ¶ 39. This Court is disinclined, upon review of the parties' authorities, that standing is not conferred until and unless the data is purchased from the dark web, or until and unless Plaintiffs experience successful identity theft. Indeed, per the Supreme Court's decision in *TransUnion*, "the 1,853 class members whose reports were disseminated to third parties suffered a concrete injury in fact under Article III." 594 U.S. at 433. Plaintiffs do not merely allege their PII was stolen; they, like the *TransUnion* class members with standing, allege that their data was disseminated. In *TransUnion*, the dissemination occurred to third-party businesses, who might take action on the letters they received. *Id.* at 440. And here, the alleged dissemination occurred to a marketplace on the dark web, where Plaintiffs have alleged it is available for purchase.[3] Moreover, unlike *CPK*, where the Court found reason to believe that the plaintiffs' PII would not be released to the dark web, Plaintiffs here *do* allege that their data is already on the dark web, and therefore subject to sale and misuse. *Compare id.* ¶¶ 118 (Plaintiff receiving notification that his data was found on the dark web) *with CPK*, 129 F.4th at 678 ("Here, the class's standing rested on questionable footing—there is no evidence that any CPK employee's compromised data was misused, *and the hacker group is apparently known for not releasing the information to the dark web once it receives its ransom payment*." (emphasis added)). To that end, this Court is satisfied that—particularly at this early stage—Plaintiffs' action should not be dismissed for lack of standing.

KYL's arguments to the contrary are not persuasive. First, they characterize Plaintiffs' injuries as "generic allegations of increased risk of future harm," among other categorizations, Motion at 5. But they do not address the Complaint's allegations this Court has discussed *supra*, which allege harm that has materialized—not merely an increased risk thereof. Second, in the Motion, their only supporting case is cited for the proposition that the "mere fact that Plaintiffs' PII has been stolen does not amount to a concrete injury for which the Court can provide a remedy." *Kirsten v. Cal. Pizza Kitchen, Inc.*, No. 21-9578, 2022 WL 1843140, at *3 (C.D. Cal. Mar. 31,

---

[3] Several Plaintiffs also allege that they have experienced a marked increase in "spam and scam phone alerts" since the data breach, "further suggesting that [their] information is in the hands of cybercriminals." Compl. ¶ 120, 131, 198.

2022); *see* Motion at 6. But *Kirsten* is plainly distinguishable. "Significantly, [the *Kirsten*] Plaintiffs [did] not allege that their PII has been misused, and [brought] this action due to the heightened risk of future misuse and the harm that may result from future misuse." *Id.* ¶ 1 (citations omitted). This Court has already explained that Plaintiffs have alleged actual misuse of their PII through its dissemination on the dark web. Third, on Reply, they attack the traceability of Plaintiffs' injuries to KYL's own actions. Reply at 1–2.[4] But this argument is contingent on KYL's conclusory argument that Plaintiffs' allegations of misuse are not traceable to the Data Breach. It is therefore distinguishable from the series of trial court cases that it cites. Here, unlike in those cases, KYL has failed to show that the information needed to commit the alleged identity theft was not obtained in the data breach. *See* Reply at 2 (collecting cases). Moreover, to the extent that this argument attacks the lack of specificity as to the third parties' actual misuse of Plaintiffs' data, it cites no authorities in support of the argument that this Complaint is overly vague. Nor is this Court independently aware of any.

In sum, reading the allegations in the Complaint as true and making reasonable inferences in Plaintiffs' favor, this Court finds that the Article III requirement is met here—Plaintiffs have sufficiently alleged actual harm by way of actual theft and dissemination of their data.[5] So, particularly at this early stage, Plaintiffs' Complaint—in particular, its allegations that the Plaintiffs' PII was accessed and stolen in the Data Breach, and that it has already been disseminated—sufficiently establishes Article III standing. While KYL may dispute the allegations in the Complaint, they have not presented a sufficient facial or factual challenge for this Court to find that Plaintiffs lack standing. To that end, dismissal for lack of standing is not warranted.

/ / /

/ / /

---

[4] In any event, the Motion's failure to attack the traceability of Plaintiffs' injuries to KYL's actions is dispositive. This Court "need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).

[5] The parties also discuss alternative bases for standing—for example, discussing whether lost time or out-of-pocket expenses would independently confer standing for Plaintiffs. *See* Motion at 7–10. Because this Court finds standing on other facts, it need not and does not resolve the question of whether the alternative bases would confer standing.

2. Plaintiffs may seek injunctive relief.

A plaintiff "must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion*, 594 U.S. at 431. "To demonstrate standing to pursue prospective injunctive relief, plaintiffs must demonstrate a concrete injury and a realistic likelihood that the injury will be repeated." *Taylor v. Westly*, 488 F.3d 1197, 1199 (9th Cir. 2007). KYL argues that Plaintiffs "have not alleged facts from which this Court may infer that injunctive relief is necessary to avoid future harm." Motion at 10. This Court founds that Plaintiffs have met their burden to show standing to seek injunctive relief.

Plaintiffs, in Opposition, explain their relevant allegations as follows. *See* Opp. at 10. They "seek injunctive relief to ensure the implementation of security measures protect the Private Information that remains in Defendant's possession." Compl. ¶ 14. The fact that their PII remains in KYL's control creates a "continuing interest" in the PII's "protect[ion] and safeguard[ing] from future breaches." *Id.* ¶¶ 105, 133, 137, 145, 148, 152, 155. The PII in KYL's possession, moreover, "remains unencrypted and available for unauthorized third parties to access and abuse," and it "remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect" it. *Id.* ¶ 215; *see also id.* ¶ 198. These allegations, taken together as true, easily establish the modest requirement to show standing for injunctive relief at this early stage. Assuming Plaintiffs are correct that their data remains in KYL's control and lacks protection, it is apparent that the injury could be repeated, and that an injunction requiring KYL to "adopt and implement best data security practices to safeguard [PII] and to provide or extend credit monitoring services and similar services to protect against all types of identity theft" would prevent or minimize harm. *Id*. § Prayer for Relief ¶ B.

Moreover, KYL's Reply, which criticizes the Complaint for ignoring evidence in KYL's breach notification website that it has already taken some corrective steps, misses the mark. First, as a general matter, the fact that a defendant would dispute or contest an allegation in the complaint does not, by itself, raise sufficient cause to dismiss the complaint. Second, KYL represents that its breach notification website "informed impacted individuals that KYL had "secure[d] [its] network and implemented additional administrative and technical safeguards to further secure the information

in [its] care.'" Reply at 9 (first alteration in original). But it has not "converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court." *Savage v. Glendale Union High Sch., Dist. No. 205*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003). And third, even if KYL *had* properly presented evidence that it has since secured its network and implemented additional administrative and technical safeguards, that would not foreclose Plaintiffs' claims: Their injunctive relief request also asks for the extension of credit monitoring services, which KYL does not address. So, for these reasons, KYL's disputing of the facts in the Complaint does not require dismissal at this stage.

The Court in *In re Ambry Genetics Data Breach Litigation*, 567 F. Supp. 3d 1130 (C.D. Cal. 2021), faced a similar question, and its approach is instructive. There, plaintiffs sought injunctive relief requiring the defendants to implement and maintain reasonable security measures, alleging this was necessary because "Defendants still possess their private information and 'Defendants have announced few if any changes to [their] data security infrastructure, processes or procedures to fix the vulnerabilities in [their] computer systems and/or security practices which permitted the Data Breach to occur." *Id.* at 1141 (alterations in original). The *Ambry* Court found, as this Court does now, that the allegations "suffic[ed] to allege that a data breach is sufficiently likely to recur such that injunctive relief will redress Plaintiffs' injuries." *Id.*

In sum, Plaintiffs have sufficiently alleged that the Data Breach could recur and that injunctive relief would prevent future harm. For that reason, the Motion as to this basis is denied. As this Court has found for Plaintiffs on both of KYL's standing challenges, it does not address KYL's claim-specific arguments below to the extent that they merely repeat KYL's argument as to why Plaintiffs lack standing.

**B. Plaintiffs state a claim for negligence.**

At issue next is whether Plaintiffs have stated a claim for negligence. KYL's argument is bipartite: It argues that it owed Plaintiffs no duty, Motion at 10–11, and that this Court should deny Plaintiffs' effort to rely upon the negligence per se doctrine as argument on the standard of care under California law. For the reasons below, the Motion as to this claim is denied.

/ / /

1. <u>Plaintiffs state KYL owed them a duty.</u>

First, Plaintiffs have sufficiently alleged that KYL owed them a duty. As the Complaint alleges, "Defendant owed a duty of care to Plaintiffs and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that their systems and networks, and the personnel responsible for them, adequately protected the Private Information." Compl. ¶ 176. Plaintiffs allege that this duty "arose as a result of the special relationship" between KYL and Plaintiffs, which arose when "Defendant was entrusted with [Plaintiffs'] confidential [PI] as a condition of submitting an insurance claim with, or seeking litigation services from, Defendant." *Id.* ¶ 177. And the Complaint alleges that KYL had other duties—like the "duty to exercise appropriate clearinghouse practices to remove [PII] that it was no longer required to retain pursuant to regulations" and the "duty to promptly and adequately notify Plaintiffs and the Class of the Data Breach." *Id.* ¶¶ 178–79. But KYL failed to carry out these duties. *Id.*

Crediting Plaintiffs' allegations as true, they have pleaded facts consistent with finding KYL owed Plaintiffs a duty of care. "[T]here is abundant authority that California law recognizes a duty on companies to take reasonable steps to protect *all* sensitive information it obtains from individuals." *In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 623, 634 (N.D. Cal. 2024) (collecting cases) (emphasis added). And "federal courts applying California law have not hesitated to extend a data company's duty of care beyond those with whom it shares privity or exceeds some threshold level of interactions." *Id.* (collecting cases). On Reply, KYL attempts to distinguish from the facts in *In re Accellion*. Reply at 9. But distinguishing its facts does not meaningfully undercut its conclusions of law, nor does it unsettle the series of state and federal cases that *In re Accellion* cites for these two propositions.

KYL frames its dispute as one about whether KYL and Plaintiffs were in a "special relationship," thus creating a duty of care to protect Plaintiffs against harm faced at the hands of third-party actors (here, the perpetrators of the Data Breach). Motion at 11. "A special relationship between the defendant and the victim is one that 'gives the victim a right to expect' protection from the defendant, while a special relationship between the defendant and the dangerous third party is

one that 'entails an ability to control [the third party's] conduct.'" *Brown v. USA Taekwondo*, 483 P.3d 159 (Cal. 2001) at 166 (quoting *Regents of Univ. of Cal. v. Superior Ct.*, 413 P.3d 656, 664 (Cal. 2018)). In contrast, where "the defendant has neither performed an act that increases the risk of injury to the plaintiff nor sits in a relation to the parties that creates an affirmative duty to protect the plaintiff from harm, . . . the defendant owes no legal duty to the plaintiff." *Id.*

But, as Plaintiffs suggest in Opposition, it is not clear that this Court would need to find a special relationship to hold KYL liable. Opp. at 11. "The general rule in California is that everyone is responsible for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person. In other words, each person has a duty to use ordinary care and is liable for injuries caused by his failure to exercise reasonable care in the circumstances." *Cabral v. Ralphs Grocery Co.*, 248 P.3d 1170, 1174 (Cal. 2011) (cleaned up) (citing Cal. Civ. Code § 1714). The special relationship doctrine exists in instances where plaintiffs seek to establish liability "beyond what each person generally owes others" under this general rule. *C.A. v. William S. Hart Union High Sch. Dist.*, 270 P.3d 699, 704 (Cal. 2012). This case is dissimilar from instances in which California courts look for a special relationship. *See, e.g.*, *id.* at 704–05 (discussing "duty to use reasonable measures to protect students from foreseeable injury *at the hands of third parties acting negligently or intentionally*" (emphasis added)). KYL's *own* conduct was allegedly negligent for increasing and allegedly causing the harm that Plaintiffs suffered, so this Court need not reach the duty-to-protect special relationship rule. Instead, as KYL's own actions with Plaintiffs' PII are at issue, it appears that the Complaint sufficiently alleges that KYL owed ordinary care to Plaintiffs in its management of their property (here, the PII). So the ordinary care rule suffices for this Court to find that dismissal of the negligence action is not proper.

Even if this Court found that a special relationship was needed to hold KYL liable for Plaintiffs' harms under a negligence theory, it would find that one existed here. On this point, the parties discuss an illustrative example, *Booker v. Hill*, 23STCV22220 (Cal. Super. Ct. Sep. 14, 2023). In *Booker*, the defendant law firm experienced a data breach that resulted in the theft of personal information from people who were not the law firm's clients. Reply at 9. There, in turn, the Superior Court cited the California Supreme Court's decision in *Brown* as its primary controlling

authority on duty of care in the negligence context. *See* Dkt. No. 51 at 6 (RJN). It concluded that no duty existed.

But, applying *Brown* as binding on California law, dismissal is not proper. The *Brown* Court explained that "as a general matter, there is no duty to act to protect others from the conduct of third parties." 483 P.3d at 164 (internal quotation marks omitted). "In a case involving harm caused by a third party, a person may have an affirmative duty to protect the victim of another's harm if that person is in what the law calls a 'special relationship' with either the victim or the person who created the harm." *Id.* at 165. "A special relationship between the defendant and the victim is one that 'gives the victim a right to expect' protection from the defendant, while a special relationship between the defendant and the dangerous third party is one that 'entails an ability to control [the third party's] conduct.'" *Id.* at 166 (quoting *Regents of Univ. of Cal. v. Superior Ct.*, 413 P.3d 656, 664 (Cal. 2018)). In contrast, where "the defendant has neither performed an act that increases the risk of injury to the plaintiff nor sits in a relation to the parties that creates an affirmative duty to protect the plaintiff from harm, . . . the defendant owes no legal duty to the plaintiff." *Id.*

But here, the Plaintiffs have alleged precisely this—that KYL performed acts which increased the risk of injury to the Plaintiffs and sits in a relationship to them that created an affirmative duty to protect them from harm. Applying the logic of *Brown*, therefore it appears to this Court that—taking Plaintiffs' allegations as true—KYL increased the risk of injury to Plaintiffs, and so a special relationship exists. Plaintiffs allege that KYL obtained their sensitive PII as a result of contractual or client relationships. From these allegations, it seems that that KYL's failure to secure the data with appropriate security protocols resulted in an increased risk of data breach, theft, and ensuing misuse. This differs from the theory pursued and rejected in *Brown*, which appears to have been to argue that the law firm—by obtaining plaintiffs' PII in the course of litigation—undertook a duty at that time. So *Brown* appears distinguishable, and the pleadings support a conclusion at this stage that a special relationship existed.

2. Plaintiffs' references to negligence per se are not improper.

KYL next argues that, to the extent that Plaintiffs attempt to rely on a negligence per se theory of breach of duty, Plaintiffs must allege facts showing that the relevant statute—which sets

the standard of care—includes a private right of action. Motion at 12. Plaintiffs respond that California law has no such requirement. Opp. at 12. KYL's Reply makes no additional argument, nor does it respond to Plaintiffs' own. *See generally* Reply.

KYL's cited authorities, which purportedly show that courts "repeatedly reject plaintiffs' attempts in data breach class actions to rely on the FTC Act to create a duty of care for a negligence per se claim," do not control. Motion at 12. The sole example they cite offers no citations to California law for support to the idea that a statute must establish a private right of action to serve as the basis of a negligence per se claim. *Pica v. Delta Air Lines, Inc.*, No. 18-2876, 2018 WL 5861362, at *9 (C.D. Cal. Sep. 18, 2018).[6] Nor do California cases do appear to reference such a requirement. *E.g.*, *Sierra-Bay Fed. Land Bank Assn. v. Superior Ct.*, 277 Cal. Rptr. 753 (Cal. Ct. App. 1991). This makes sense: under California law, the doctrine of negligence per se is not a separate cause of action, but it creates an evidentiary presumption that affects the standard of care. *Das v. Bank of Am., N.A.*, 112 Cal. Rptr. 3d 439, 448 (Cal. Ct. App. 2010). So, as the underlying claim does not derive from a statutorily created right of action, none appears needed.

* * *

Because this Court finds that a duty of care has been sufficiently alleged and is pleaded consistently with California law, and because KYL has failed to show that Plaintiffs' references to negligence per se are impermissible or that they warrant dismissal, the Motion as to this claim is denied.

**C. Plaintiffs fail to state a claim for breach of contract as third-party beneficiaries.**

Under California law, breach of contract claims require a showing of (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff. *D'Arrigo Bros. of Cal. v. United Farmworkers of Am.*, 169 Cal. Rptr. 3d 171, 178 (Cal. Ct. App. 2014). "Because third party beneficiary status is a matter of contract interpretation, a person seeking to enforce a contract as a third party beneficiary must plead

---

[6] The Motion offers two cases as examples. Motion at 12. But *Gardner v. Nationstar Mortgage LLC*, No. 14-1583, 2015 WL 1405539 (E.D. Cal. Mar. 26, 2015), does not involve negligence per se at all. *Id.* at *1.

a contract which was made expressly for the person's benefit and one in which it clearly appears that the person was a beneficiary." *Schauer v. Mandarin Gems of Cal., Inc.*, 23 Cal. Rptr. 3d 233, 239 (Cal. Ct. App. 2005) When considering whether a third-party beneficiary breach of contract claim is properly brought, courts consider

> the express provisions of the contract at issue, as well as all of the relevant circumstances under which the contract was agreed to, in order to determine not only (1) whether the third party would in fact benefit from the contract, but also (2) whether a motivating purpose of the contracting parties was to provide a benefit to the third party, and (3) whether permitting a third party to bring its own breach of contract action against a contracting party is consistent with the objectives of the contract and the reasonable expectations of the contracting parties.

*Goonewardene v. ADP, LLC*, 434 P.3d 124, 133 (Cal. 2019). "All three elements must be satisfied to permit the third party action to go forward." *Id.*

The parties appear to broadly agree that these requirements apply. *See* Motion at 14; Opp. at 14. KYL argues that the pleadings do not sufficiently plead this claim in light of these requirements. This Courts agrees, and on that basis, it grants the Motion as to this claim. Given the lack of binding authority that KYL presents as to the proposed requirement that this Court dismiss the claim for lack of an independent private right of action, this Court is not inclined to dismiss the claim.

In Opposition, Plaintiffs argue that they have sufficiently alleged third-party beneficiary status, and that KYL is therefore fairly on notice as to the claims under Rule 8. *See* Opp. at 14. In support, Plaintiffs point this Court to the following two paragraphs in the Complaint:

> Plaintiffs are informed and believe that Defendant and its clients were parties to uniform contracts under which Defendant agreed to process, store, collect, and safeguard the sensitive and private data that Plaintiffs entrusted to Defendant's clients.
>
> At the time these contracts were made, Defendant and Defendant's clients mutually intended that Plaintiffs would be beneficiaries under their contracts. Even if it was not expressly stated that the contracts were intended to benefit Plaintiffs, this intent was apparent through ordinary means of contract interpretation and in light of surrounding circumstances. Any other interpretation of the contracts would lead to an absurd result.

*See* Compl. ¶¶ 219–20. But most, if not all, of the allegations in the latter paragraph appear to be conclusory and therefore properly disregarded. *See Twombly*, 550 U.S. at 545. Moreover, Plaintiffs fail to properly allege the parties to the contracts, the intent with which they entered the contracts, or any factual bases that would support plausible inferences that Plaintiffs have a claim. Without more,

Plaintiffs fall far short of plausible inferences that would permit this Court to consider the factors detailed in *Goonewardene*. Even construing the pleadings liberally and drawing inferences in Plaintiffs' favor, the Complaint fails.

In sum, because the third-party beneficiary allegations lack in detail and do not provide the requisite information for this Court to consider whether the three requirements in *Goonewardene* are met, the Motion as to this claim is granted. Dismissal is with leave to amend, as it is possible that amendment will allow Plaintiffs to correct the deficiencies with this claim.

**D. Flato fails to state a claim for violation of California's Unfair Competition Law.**

California's Unfair Competition Law prohibits an entity from engaging in any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. This claim is brought only by Flato, as the only California resident among Plaintiffs. KYL argues Flato's claim fails because they have failed to establish UCL-specific standing (that is, a qualifying injury in fact), and because they have failed to allege that they lack adequate remedies at law.[7] For two independently sufficient reasons discussed below, the Motion as to this claim is denied.

1. <u>Flato has not plausibly alleged standing to sue under the UCL.</u>

First, as a threshold matter, this Court must consider whether Flato has plausibly alleged standing. It finds he has not.

To sustain a UCL claim, "must demonstrate some form of economic injury." *Kwikset Corp. v. Superior Ct.*, 246 P.3d 877, 885 (Cal. 2011). "There are innumerable ways in which economic injury from unfair competition may be shown." *Id.* For example:

> A plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary.

[7] KYL makes additional arguments on Reply—for example, arguing that the unfairness prong of the UCL is not met as a matter of law. Reply at 14–15. This Court need not address arguments not disclosed in the Motion, to which Plaintiffs had no chance to respond.

*Id.* at 885–86. Flato pursues two theories in support of standing under the UCL. First, he argues that "he would have avoided transacting with Defendant, through interactions with the third parties who provided Defendants with [his] data, had he known Defendant would collect and improperly expose his data due to lax security policies." Opp. at 15. Second, he alleges "a diminution of value of his data." *Id.* at 16. This Court addresses each theory in turn.

First, the Complaint's allegations do not support a theory of injury-in-fact through a loss of benefit of the bargain. Plaintiffs' Opposition cites a case that concludes that "many federal courts, applying *Kwikset* in the context of data-breach litigation, have held plaintiffs adequately pleaded UCL standing under similar benefit-of-the-bargain theories." *Moore v. Centrelake Med. Grp., Inc.*, 299 Cal. Rptr. 3d 544, 555 (Cal. Ct. App. 2022) (collecting cases). This does not resolve the question—*Moore* and its cited cases all appear to address situations in which the plaintiff and the defendant transacted with each other. *Id.* But here, Flato has pleaded that he was unaware that KYL had his data at all. *Id.* Compl. ¶ 142. He did not recognize its name upon receipt of the Notice Letter, and had no awareness of "why or how Defendant had his Private Information stored on its systems." *Id.* So Flato's allegations undercut his own theory—that he was harmed by receiving less than he bargained for (from KYL, whom he did not bargain with at all). Moreover, as this Court has already explained, the contractual relationship that resulted in KYL's possession of Flato's data is not sufficiently pleaded, nor is it clear that Flato was intended to be a beneficiary of these contracts between KYL and unnamed third parties. Without more, the Complaint fails to plead sufficient facts to support an inference of standing.

Second, under California law, Flato's diminution-of-value theory of UCL standing fails. The Complaint alleges that Flato's injuries include "lost or diminished value of PII." Compl. ¶ 142. But Flato "did not allege [he] ever attempted or intended to participate in this market, or otherwise to derive economic value from [his] PII," nor "that any prospective purchaser of their PII might learn that their PII had been stolen in this data breach and, as a result, refuse to enter into a transaction with them, or insist on less favorable terms." *Moore*, 299 Cal. Rptr. 3d at 564. "In the absence of any such allegation, appellants failed to adequately plead that they lost money or property in the form of the value of their PII." *Id.* at 564. In Opposition, Flato cites a nonbinding case that found pleadings

sufficient when the complaint alleged that a market existed for consumers to monetize their personal information, which the defendants had usurped. Opp. at 16 (citing *A.B. v. Google LLC*, 737 F. Supp. 3d 869, 881–82 (N.D. Cal. 2024)). But, even if this controlled over the standard in *Moore*, it is not met here. Plaintiffs have discussed the market for their PII only in the context of wrongdoers participating in identity theft in a "sophisticated black market." *See* Compl. ¶¶ 45–47, 71, 91, 94. In Opposition, Plaintiffs do not argue—not does it appear that they *can* argue—that Flato has established his participation in the market for his own PII. So this standing theory also fails.

Taken together, Plaintiffs have not sufficiently alleged facts to support a finding that Flato has standing.

2. Flato has not plausibly alleged the inadequacy of legal remedies.

A plaintiff in federal court "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). A finding that "the operative complaint does not allege that Sonner lacks an adequate legal remedy" supports a conclusion that the plaintiff has not met their pleading burden. KYL argues that the Complaint failed to make this allegation, so the same principle in *Sonner* supports dismissal of the claim. Motion at 16. The Opposition does not mention the adequate-remedies-at-law doctrine or *Sonner*, nor does it appear to engage with this argument of KYL's at all. Flato, therefore, has waived argument on this topic.

*Sonner* plainly appears to control, and the Complaint includes no such allegation of the inadequacy of Flato's remedies at law. For that reason, this Court agrees that the claim should be dismissed. To that end, as to this claim, the Motion is granted with leave so that Flato may attempt to correct the deficiencies with the Complaint.

**E. Flato states a claim for violation of California's Consumer Privacy Act.**

Flato, as the sole California Plaintiff, pursues two related claims for violations of California's Consumer Privacy Act. Compl. ¶ 244–51. The first is that KYL failed to provide Flato notice of the Data Breach within thirty days of "discovery or notification of the data breach," in violation of California Civil Code § 1798.82(a)(2)(A). Compl. ¶ 245. The second is that KYL failed to "implement and maintain reasonable security procedures and practices" in its storage of Plaintiffs'

PII, in violation of California Civil Code § 1798.150(a)(1). *Id.* ¶ 246. For the reasons below, KYL has not shown that dismissal is warranted.[8]

First, KYL argues that "Flato does not allege facts demonstrating [] specific deficiencies in KYL's security measures." Motion at 17. The Complaint alleges that KYL violated the CCPA by "failing to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the nonencrypted PII of [Flato] and the California Subclass." Compl. ¶ 246. KYL contends those allegations are vague and conclusory, and that Flato offers no more details into the alleged security deficiency. Motion at 17.

But, as the Opposition notes, KYL's argument understates the specificity of the Complaint. Crucially, KYL does not address the fact that the Complaint does note that the specific failure to maintain reasonable security practices arose as a result of KYL's failure to "encrypt[] the information or purg[e] it when it is no longer needed." Compl. ¶ 26, 31. This, Plaintiffs state in the Complaint, "caus[ed] the exposure of Private Information." *Id.* The Complaint also alleges other defects. *Id.* ¶ 52, 55 (alleging that KYL failed to "install[] appropriate malware detection software; monitor[] and limit[] network ports; protect[] web browsers and email management systems; set[] up network systems such as firewalls, switches, and routers; monitor[] and protect[] physical security systems; protect[] against any possible communication system; and train[] staff regarding critical points"). Based on a plain read of these allegations, it appears to this Court that the Complaint seeks to recover from KYL under section 1798.150(a)(1) specifically because of the named deficiencies in what should have been commercially reasonable security protocols. And, on Reply, KYL's argument is not persuasive. KYL characterizes Plaintiffs as alleging "nothing more than 'because there was a breach, [defendant's] data security was inadequate.'" Reply at 15 (citing *Griffey v. Magellan Health Inc.*, 562 F. Supp. 3d 34, 49 (D. Ariz. 2021)). Again, this fails to account for the array of tangible,

[8] KYL makes additional arguments on Reply—for example, that it does not qualify as a business under the CCPA. Reply at 15–16. This Court need not address arguments not disclosed in the Motion, to which Plaintiffs had no chance to respond.

actionable security measures that Plaintiffs' Complaint alleges.[9] Of course, whether KYL actually failed to follow these procedures (and whether they are commercially reasonable at all) is not a question this Court faces. But, at this stage, allegations suffice to put KYL on fair notice of the specific factual basis behind the claims. So dismissal for this reason is not warranted.

Second, KYL argues that Flato has not complied with the requirements of the statute, which requires that a consumer, "*prior to initiating any action* against a business for statutory damages on an individual or class-wide basis, . . . *provide[] a business 30 days' written notice* identifying the specific provisions of this title the consumer alleges have been or are being violated." Cal. Civ. Code § 1798.150(b). KYL contends that, though Flato has alleged he gave written notice, he has failed to establish when he did so, and therefore it is not clear that KYL had thirty days' notice to correct the deficiency. Motion at 18. Curiously, KYL does not affirmatively allege that it *did* receive notice within thirty days of the commencement of this action—only that the date is not in the Complaint. In any event, it does not appear that Flato presently seeks statutory damages. Opp. at 19 (discussing Plaintiffs' intent to modify the Complaint in the future to seek statutory damages). KYL fails to address this point in Reply. And, in any event, the statute does not appear to apply if Plaintiffs are not presently seeking statutory damages,[10] such that he does not fall within the definition of section 1798.150(b). To that end, dismissal based on deficient notice under the statute is not proper, and the Motion as to this basis is denied.

## IV. **Conclusion**

For the foregoing reasons, the Court hereby ORDERS as follows:

1. The Motion is GRANTED as to Plaintiffs' second cause of action for unjust enrichment, as Plaintiffs have withdrawn this claim, and the claim is dismissed WITHOUT leave to amend.

---

[9] In *Gaffney*, the Court found that the plaintiffs "allege no specific reasons explaining why Magellan's data security was inadequate," and only offered "post hoc explanations"—for example, that two data breaches had occurred in the preceding year, so there must be deficient security protocols. 562 F. Supp. 3d 34 at 50. *Gaffney*, therefore, is easily distinguished.

[10] It appears Plaintiffs seek to amend the Complaint to add a request for statutory damages under the CCPA in the near future. But this Court cannot adjudicate a motion to dismiss a request that is not properly before it yet. Today's Order is without prejudice to KYL in seeking recourse in the future.

2. The Motion is GRANTED as to Plaintiffs' third cause of action for breach of contract as third-party beneficiaries, and the claim is dismissed WITH leave to amend.
3. The Motion is GRANTED as to Plaintiffs' fourth cause of action for California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq., and the claim is dismissed WITH leave to amend.
4. The Motion is GRANTED as to Plaintiffs' sixth cause of action for California's Customer Records Act, Cal. Civ. Code § 1798.80 et seq., as Plaintiffs have withdrawn this claim, and the claim is dismissed WITHOUT leave to amend.
5. The Motion is otherwise DENIED.
6. Should Plaintiffs wish to amend any of the claims dismissed with leave to amend, they must do so within thirty (30) days of the date of this Order. Should Plaintiffs fail to file a further amended complaint, the only claims that shall remain are those not dismissed by this Order, and the operative filing date for the Defendants' responses shall be the thirty-day date upon which the further amended complaint should have been filed.
7. With the issuance of this Order, the parties' Joint Request Pursuant To Local Rule 83-9.2, Dkt. No. 64, is GRANTED.
8. The Court will issue an Order Setting Scheduling Conference forthwith.

IT IS SO ORDERED.

Dated: September 30, 2026.

MAAME EWUSI-MENSAH FRIMPONG
United States District Judge